UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
AUTOMOTIVE FINANCE
CORPORATION,

               Plaintiff,

               -against-

KELLEY ANDREE RAPHAEL and
AUTOSOURCE I, INC.,

               Defendants.
----------------------------------------------------------x

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUL 31 2019 ★

BROOKLYN OFFICE

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
No. 16-CV-2027 (CBA) (SMG)

**AMON, United States District Judge:**

Automotive Finance Corporation ("AFC") brought this case against Autosource I, Inc. and Kelley Andree Raphael on April 25, 2016, alleging breach of contract under Indiana law. (D.E. # 1.) On September 17, 2018, the Court granted default judgment against both Defendants, jointly and severally, in the amount of $292,529.32. (D.E. # 49.) In a letter dated February 4, 2019, Kelley Raphael moved pro se to reopen the case on the ground that she was unaware of this matter and that her husband, Wendells Raphael, used her name to carry out Autosource I, Inc.'s business without her knowledge or consent. (D.E. # 52.) For the reasons stated below, Kelley Raphael's motion is granted.

## BACKGROUND

Because Kelley Raphael's knowledge of this matter is central to the resolution of her motion, the Court will explain the procedural history of the case in great detail. AFC filed its complaint on April 25, 2016. (D.E. # 1.) Soon after, AFC issued a summons to Kelley Raphael at 11840 223rd St., Cambria Heights, NY 11411. (D.E. # 3.) On May 12, 2016, attorney Shaun M. Malone answered the complaint on behalf of both Autosource and Kelley. (D.E. # 9.) On May 25, 2016, an individual named Calvin H. Chen attested that he had served the summons, complaint,

1

and exhibits on Kelley Raphael on May 12, 2016, "[b]y delivering and leaving a true copy or copies of the aforementioned documents with said Matthew [M]ack, co-occupant." (D.E. # 11.)

For some time after, the case proceeded regularly. On June 22, 2016, an individual named "Blatt" appeared on behalf of both Defendants at an initial conference. (D.E. # 13.) On June 27, 2016, Malone again appeared for both Defendants at a pre-motion conference. (D.E. dated June 27, 2016.) AFC and Malone, on behalf of both Defendants, filed a fully briefed motion for replevin with the Court on July 21, 2016. (D.E. # 26–20.) The Court heard oral argument on that motion on August 8, 2016. (D.E. dated August 8, 2016.)

At that oral argument, "counsel for defendants requested leave to file a motion to be released as counsel. Plaintiff indicated that it d[id] not oppose defense counsel's motion. Defense counsel was instructed to file a motion for an order to show cause why defense counsel should not be released as counsel for defendants by August 10, 2016." (Id.) Malone filed that letter on August 9, 2016. (D.E. # 21-1.) In that letter, Malone averred that he had "personally spoken with Defendant Autosource's principal, Wendells Raphael (who has acted as the sole contact person for our firm with respect to both our representation of both Autosource and of his wife, Kelly Andree Raphael, as guarantor) in this matter." (Id. ¶ 4.) Since then, Defendants began to "refuse[] or neglect[] to respond to . . . attempted communications." (Id. ¶ 6.) Malone's letter did not indicate that he had ever spoken to Kelley Raphael. The Court issued an order to show cause directing Defendants to appear before the Court on August 19, 2016. (D.E. # 23.) Malone sent that order to show cause to Kelley Raphael via overnight mail at the address 393 Lenox Avenue, Uniondale, NY, 11553. (D.E. # 24.) The Defendants failed to appear at a conference on August 19, 2016, and the Court permitted Malone to withdraw as attorney three days later. (D.E. # 22.) The Court directed Defendants to obtain new counsel and further directed AFC to refile its request for

2

replevin. (D.E. dated August 19, 2016.) This order was served on "Huggettet Raphael, mother" on August 23, 2016, at 393 Lenox Avenue, Uniondale, NY 11553. (D.E. # 27.)

Thereafter, Defendants stopped appearing. An order directing Defendants to appear on September 27, 2016 to show cause why an order for possession of certain collateral should not issue was served by FedEx to Kelley Raphael's Lenox Ave. address on September 21, 2016. (D.E. # 30–32.) Kelley failed to appear and thus defaulted on September 27. (D.E. dated September 27, 2016.) An order of possession issued on December 23, 2016. (D.E. # 36.) Service of that order was returned executed by Wendells Raphael, Kelley's husband, on February 9, 2017. (D.E. # 37.) AFC requested default on September 2, 2017, and AFC's attorney attested that the request was served on both Defendants "by sending it regular mail to each defendant at their last known address." (D.E. # 39, 39-2.) The clerk of court entered default on October 3, 2017. (D.E. # 41.)

Magistrate Judge Steven M. Gold recommended granting default judgment against both Defendants jointly and severally in an amount totaling $292,529.32 on February 12, 2018. (D.E. # 47.) The Report and Recommendation ("R&R") referred to Kelley Raphael as "an individual residing in Queens, New York," as had the complaint. (D.E. # 47 at 2; D.E. # 1.) The R&R concluded that AFC and the Defendants "entered into a Demand Promissory Note and Security agreement . . . , under which plaintiff would provide floor plan financing to defendant Autosource I, Inc. for its retail car business." (D.E. # 47 at 2.) "Defendant Raphael signed the agreement individually and in [her] representative capacity. Raphael also executed a personal guaranty providing for full and prompt payment, when due, whether by acceleration or otherwise . . . of any and all obligations under the Note." (Id. (internal citations, alterations, and quotation marks omitted).) The R&R ultimately concluded that both Defendants breached the agreements and were liable for $292,529.32 in damages. (Id. at 7.) AFC's counsel declared that she served the R&R

on both Defendants by certified and regular mail at their last known addresses. (D.E. # 48.) Neither Defendant filed objections to the R&R and, on September 14, 2018, the Court adopted it in full. (D.E. # 49.) The clerk of court entered judgment accordingly. (D.E. # 50.)

On February 4, 2019, Kelley Raphael filed a pro se letter asking the Court to reopen the case against her. (D.E. # 52.) She wrote that she "visited this Court on Monday, January 28, 2019 and was advised by a pro se clerk to write this letter to request that the case be reopened." (D.E. # 52 at 1.) Kelley informed the Court that her husband, Wendells Raphael, "use[d] [her] identity and sign[ed] documentation, including the documents that form the basis of plaintiff's case, in [her] name and without [her] permission." (Id.) She "recently learned that at one point Wendells created a false driver's license with [her] name and his picture to enable him to conduct business with a financing company." (Id. at 1–2.) She claimed that AFC's attorney had been contacting her at a prior address and that she had been living at 1517 Broadway, Hewlett, New York 11557 since 2014, that she did not receive the judgment in the case until January 2019, and that "[a]lthough Wendells apparently hired an attorney to represent [her] and Autosource, [she] had no knowledge of this." (Id. at 2.) She also noted that she "consulted with an attorney who told [her] about this case" in 2017, "but at the time there was no activity so [she] focused on" other matters that her husband's conduct had gotten her involved in. (Id. at 3.)

AFC filed an opposition to Kelley's request on February 13, 2019, which was served at Kelley's now-correct address. (D.E. # 53, 53-3.) Kelley filed a reply on February 21, 2019 reiterating her earlier claims, noting that Wendells was recently deported to Haiti, and attaching a letter from the Small Business Administration to substantiate her claims. (D.E. # 54.) The letter from the Small Business Administration noted that "[o]n April 21, 2017, the Department of the Treasury proposed to collect money it claimed [Kelley] owed the United States Small Business

4

Administration (SBA) through wage garnishment." (Id. at 8.) Kelley "claimed that [her] signatures on the debt instruments were forged." (Id.) The SBA conducted an investigation with the help of the U.S. Secret Service Office of Investigations Forensic Service Division. (Id. at 9.) The Secret Service concluded that "Kelley Andree Raphael . . . may not have written the Kelley A. Raphael/Kelley Andree Raphael signatures" but that "[t]he evidence . . . is far from conclusive." (Id.) As a result, the SBA "decided that [she] did not owe the debt to SBA" and that "[t]herefore, wage garnishment may not go forward." (Id. at 8.)

## STANDARD OF REVIEW

Rule 55(c) of the Federal Rules of Civil Procedure governs the setting aside of a default or default judgment and states that "[t]he court . . . may set aside a final default judgment under Rule 60(b)." Rule 60(b), in turn, provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) Mistake, inadvertence, surprise, or excusable neglect;

(2) Newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) Fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) The judgment is void;

(5) The judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) Any other reason that justifies relief."

The Second Circuit has held that: "In applying Rule 60(b)(1) in the context of default judgments, courts have gone beyond the bare wording of the rule and established certain criteria which should be considered in deciding whether the designated standards have been satisfied.

5

These criteria... include (1) whether the default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted." Davis v. Musler, 713 F.2d 907, 915 (2d Cir. 1983). "[I]n ruling on a motion to vacate a default judgment, all doubts must be resolved in favor of the party seeking relief from the judgment in order to ensure that to the extent possible, disputes are resolved on their merits." New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005).

Because Kelley Raphael proceeds pro se, her motion is "to be liberally construed." Estelle v. Gamble, 426 U.S. 97, 106 (1976). It must be read "to raise the strongest arguments that [it] suggest[s]." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

## DISCUSSION

### I. Merits of Kelley's Motion

As noted above, in order to resolve Kelley's motion, the Court must consider: (1) whether her default was willful; (2) whether she has presented a meritorious defense; and (3) the level of prejudice that might result to AFC if relief is granted. Davis, 713 F.2d at 915. The Court discusses each factor in turn.

#### A. Willfulness

Kelley's papers can be read to suggest that her default was not willful because she was entirely unaware of her case until at least 2017 and that, even after then, she was not receiving the papers sent to her because they were sent to an incorrect address. (D.E. # 52 at 2, 3.) The Court concludes that the "willfulness" factor weighs strongly in Kelley's favor.

The Second Circuit has "interpreted 'wilfullness,' in the context of a default, to refer to conduct that is more than merely negligent or careless." McNulty, 137 F.3d at 738. "On the other hand, the court may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained." Id. "Thus, defaults have been found willful

where, for example, an attorney failed, for unexplained reasons, to respond to a motion for summary judgment; or failed, for flimsy reasons, to comply with scheduling orders; or failed, for untenable reasons, after defendants had 'purposely evaded service for months,' to answer the complaint; or failed, for incredible reasons, to appear for a scheduled pretrial conference and unaccountably delayed more than 10 months before moving to vacate the ensuing default." Id. at 738–39 (internal citations omitted).

AFC attempts to cast Kelley's inaction as "willful" by describing her as "uncommunicative" and "uncooperative" with her former counsel, Malone, (D.E. # 53-3 at 5); by arguing that "she and her husband declined cooperation" with a United States Marshal and "instead provided a series of false, misleading and expired leases," (id.); by stating that "she chose not to act" when she learned of the case in 2017, (id.); and characterizing her decision to act now as a deliberate choice after AFC "recorded its docketed judgment against [her] real property . . . in Queens, New York," (id.). AFC concludes: "The rules are not designed to reward apathetic participants who willfully choose to ignore their responsibilities and sit on their rights until faced with the inevitable consequences of their inaction." (Id.)

Many of AFC's characterizations of Kelley's behavior are misleading. Although Malone described his clients as uncommunicative and uncooperative in his letter to the Court, he wrote that he had "personally spoken with Defendant Autosource's principal, Wendells Raphael (who has acted as the sole contact person for our firm with respect to both our representation of both Autosource and of his wife, Kelly Andree Raphael, as guarantor)." (D.E. # 21-1 ¶ 4.) There is no indication that he ever spoke with Kelley, and her letter states that she has never met Malone and that Wendells hired him on her behalf without her knowledge. (D.E. # 52 at 2, 3.) Further, the record does not reflect that Kelley declined to cooperate with the U.S. Marshals. The Marshals

Service served AFC's order of possession, but did so upon Wendells Raphael at an address where Kelley did not live. (D.E. # 37.) And Kelley's choice to defend this action only after judgment was filed against her real property in Queens could reflect the first moment in which she received notice of filings against her, since the Court and AFC have consistently served her at the wrong address throughout the pendency of this action.

AFC's sole argument with any force is that Kelley appears to concede that she learned about this action in 2017. However, Kelley explains that when she found out about this case, "there was no activity so [she] focused on the items with activity." (D.E. # 52 at 3.) Kelley is a pro se litigant who, beginning in May 2016, "started receiving late notices about past-due debts from various debtors that [she] previously had no knowledge existed" because her husband had "use[d] her identity and sign[ed] documentation" without her knowledge or permission and "created a false driver's license" to enter into further business deals in her name. (Id. at 2, 3.) Even after she learned of the case, she could not afford to retain counsel. (Id. at 3.) Filings continued to be sent to the wrong address. Given this context, the Court cannot say Kelley's conduct was "egregious" or "not satisfactorily explained." McNulty, 137 F.3d at 738. The willfulness factor thus favors reopening the case against Kelley.

**B. Meritorious Defense**

Kelley's letter also indicates that if the case were to be reopened, she would put forth the defense that her signatures on the contracts were forged. (D.E. # 52 at 1.) Kelley is candid about this claim, stating: "I am positive that I did not sign the Aggregate Advance Limit Amendment for $300,000 or the Aggregate Advance Limit Amendment for $450,000. To be honest, I am not sure about the documents signed on 1/22/2015. Those signatures look similar to mine, including the Aggregate Advance Limit of $150,000. I cannot definitively say that those signatures are or are not mine." (D.E. # 54 at 1–2.) "In order to make a sufficient showing of a meritorious defense in

8

connection with a motion to vacate a default judgment, the defendant need not establish his defense conclusively, but he must present evidence of facts that, 'if proven at trial, would constitute a complete defense.'" McNulty, 137 F.3d at 740 (quoting Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 98 (2d Cir. 1983)) (internal citation omitted). The Court concludes that Kelley has done so.

Kelley has provided credible evidence that Wendells forged documents in her name. The Small Business Administration cancelled a debt owed to it by Kelley upon her plausible showing that her signature on the underlying loan was a forgery. (Id. at 8–10.) Kelley's testimony that she did not sign the relevant contracts will provide further evidence, as could the testimony of a handwriting expert (of the sort that convinced the SBA that her signature may have been forged). If Kelley's signature was in fact forged, AFC's contract with her is not enforceable. See, e.g., Jensen v. Ray Kim Ford, Inc., 920 F.2d 3, 4 (7th Cir. 1990) ("a forged note is by the common law absolutely void, unless it has in some way been ratified by the payor") (internal quotation marks omitted); Laborers' Pension Fund v. A. & C. Environmental, Inc., 301 F.3d 768, 779 (7th Cir. 2002) (where "a promisor's signature . . . has been forged[,] . . . the contract is void; it has never had any legal effect"). The Court finds that the "meritorious defense" factor weighs strongly in Kelley's favor.

### C. Prejudice

The final factor the Court must consider in deciding this motion to vacate default judgment is whether vacatur would result in significant prejudice to AFC. Davis, 713 F.2d at 915. AFC argues that "allowing the judgment to be set aside would significantly prejudice the Plaintiff's rights and cause it [to] incur additional legal expenses to the already significant amount of legal fees spent in this case." (D.E. # 53-2 at 3–4.)

The Second Circuit has previously noted that "[s]ome delay is inevitable when a motion to vacate a default judgment is granted; thus, delay alone is not a sufficient basis for establishing

9

prejudice." Green, 420 F.3d at 110 (internal quotation marks omitted). Like delay, all successful motions for default judgment will carry with them additional legal costs to a plaintiff. The Court therefore finds that this is not a sufficient basis to establish prejudice. AFC has not argued that reopening this case would "result in the loss of evidence, create increased difficulties of discovery, [] provide greater opportunity for fraud and collusion" or "thwart plaintiff's recovery or remedy." Id. (internal quotation marks omitted). In fact, reopening this case against Kelley will not impede AFC's ability to collect against Autosource I; that company is jointly and severally liable for the full judgment.

* * *

As dicussed above, each factor the Court must consider in deciding whether to grant Kelley's motion weighs in her favor. Kelley's motion to vacate the default judgment entered against her is granted.

## II. Conditions of Vacatur

AFC's opposition papers state that "[i]f the Court has any inclination that it is going to grant this application, it is respectfully requested that the Court only due [sic] so on strict compliance with the Order of Possession and reimbursement of the attorneys fees ($21,978.97) and the costs of the replevin bond ($3000.00) that Plaintiff has incurred since Defendants' attorney was relieved as counsel." (D.E. # 53-2 at 6.) AFC adds, "[t]he Vehicles must be turned over to the Plaintiff and Defendant compelled to pay all of the attorney fees Plaintiff has incurred since counsel was relieved of representation in August of 2016, totaling $24,978.97, as a condition of vacating the default judgment." (Id.) AFC fails to cite any authority for conditioning a vacatur of default judgment on the payment of attorney's fees and costs. The Court declines to condition its decision in the manner requested, as Kelley was not ordered to pay attorney's fees in this Court's September 17, 2018, grant of default judgment. (See D.E. # 47 at 6 n.2.)

## CONCLUSION

For the foregoing reasons, Kelley's motion to vacate the default judgment against her and reopen the case is granted. The Clerk of Court is directed to reopen Case No. 16-CV-2027 with respect to Defendant Kelley Andree Raphael.

SO ORDERED.

Dated: July 30, 2019
      Brooklyn, New York

s/Carol Bagley Amon
Carol Bagley Amon
United States District Judge